**Kiu Young BAE, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 82–1986.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1982.

Decided May 13, 1983.

Robert Frager, P.C., Kansas City, Mo., for petitioner.

Lauri Steven Filppu, Atty., U.S. Dept. of Justice, Robert Kendall, Jr., Atty., Gen. Litigation and Legal Advice Section, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Kiu Young Bae petitions this court for review of a decision of the Board of Immigration Appeals (BIA) denying his motion to reopen deportation proceedings. For the reasons discussed below, we deny the petition for review.

Petitioner, a citizen of Korea, first entered the United States on May 22, 1976, as a nonimmigrant student to attend graduate school. *See* 8 U.S.C. § 1101(a)(15)(F)(i). On April 12, 1977, petitioner's mother, Sang Won Bae, at that time a permanent resident, filed an alien relative visa petition with the Immigration and Naturalization Service (INS) on petitioner's behalf. *See id.* § 1151(b). On April 28, 1977, the district director of INS in Kansas City, Missouri, approved the visa petition, granting petitioner "second preference" status as the unmarried son of an alien lawfully admitted for permanent residence. *See id.* § 1153(a)(2). On July 8, 1977, petitioner filed an application for adjustment of status from nonimmigrant to permanent resident on the basis of the approved visa petition. *See id.* § 1255(a).

Up to this point petitioner had progressed relatively smoothly through the immigration paperwork. However, sometime in mid-July, 1977, petitioner left the United States and returned to Korea and got married. Petitioner and his wife then returned to the United States.

On December 6, 1977, petitioner was interviewed by INS in connection with his pending application for adjustment of status. During this interview petitioner stated that he was single and had never been married and that he last entered the United States on May 22, 1976. The INS did not know that these statements were not true and approved petitioner's application for adjustment of status.

On January 30, 1978, petitioner filed an alien relative visa petition on behalf of his wife. In the visa petition petitioner stated that he and his wife were married on July 19, 1977, in Korea, and submitted documentation of his marriage. The marital status information was inconsistent with petitioner's second preference status as the unmarried son of a permanent resident, which was the basis for the approval of the visa petition filed on petitioner's behalf and the grant of adjustment of status. On May 31, 1978, the INS notified petitioner of its intent to rescind the grant of adjustment of status. *See id.* § 1256(a). Following a hearing, on October 27, 1978, the immigration judge rescinded petitioner's permanent resident status because petitioner was married as of December 6, 1977, and thus was not eligible for a second preference immigration visa and adjustment of status on that date as the unmarried son of a permanent resident.

On November 9, 1978, petitioner filed a request for reinstatement of status as a nonimmigrant student and an application for extension of stay. On January 22, 1979, the INS denied the petition for reinstatement but granted petitioner an extension of voluntary departure until June 1, 1979, to allow petitioner to finish the university semester. Petitioner later requested another extension, which was denied. The INS, however, granted petitioner until July 1, 1979, to make necessary travel arrangements. Petitioner did not leave the United States by that date and on August 13, 1979,

the INS began deportation proceedings by issuing a show cause order and notice of deportation hearing, charging that petitioner was subject to deportation pursuant to 8 U.S.C. § 1251(a)(2) because he had remained in the United States longer than he was authorized. At the hearing on August 23, 1979, petitioner appeared with counsel, admitted deportability and requested deportation to Korea. The immigration judge found petitioner was deportable and granted petitioner the privilege of voluntary departure by January 31, 1980. Petitioner did not appeal the deportation decision to the BIA.

Petitioner did not leave the United States and instead filed a motion to set aside the deportation order. The immigration judge viewed the motion as a request for an extension of voluntary departure and referred the request to the district director. The district director denied the request but granted petitioner until February 29, 1980, to depart voluntarily, upon the assurance of counsel that petitioner would leave upon completion of travel arrangements. Upon the request of petitioner's new counsel, the district director granted another extension until March 15, 1980. However, on March 17, 1980, the INS received a letter from counsel stating that a petition for judicial review had been filed in federal district court. That same day petitioner filed an application for waiver of grounds for excludability. The application was denied by the district director and affirmed by the regional commissioner.

On November 18, 1980, petitioner filed a motion to reopen deportation proceedings and to set aside the order of rescission and deportation, alleging that the INS had improperly failed to warn him that marriage would jeopardize his second preference status, automatically revoke approval of the visa petition and make him ineligible for adjustment of status, citing 22 C.F.R. § 42.122(d) (1982) [1] and *Corniel-Rodriguez*

---

1. Title 22 C.F.R. § 42.122(d) provides in part: The consular officer shall also warn an alien issued a visa as a first or second preference immigrant as an unmarried son or daughter

of a citizen or lawful permanent resident of the United States that he [or she] will be inadmissible as such an immigrant if he [or

*v. INS*, 532 F.2d 301 (2d Cir.1976). On March 8, 1982, the immigration judge denied the motion to reopen on the ground that the regulation and *Corniel-Rodriguez* case were not applicable.[2] The BIA affirmed on June 18, 1982. Petitioner then filed a petition for review in this court.[3]

The courts of appeal have authority to review final orders of deportation under 8 U.S.C. § 1105a(a).[4] *See Cheng Fan Kwok v. INS*, 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968). Petitions for review must be filed within six months of the date of the final deportation order, *see* 8 U.S.C. § 1105a(a)(1), and petitioners must exhaust all available administrative remedies, *see id.* § 1105a(c). The courts of appeal will also review under § 1105a(a) denials of discretionary relief connected closely with final deportation orders, such as denials of motions to reopen deportation proceedings. *See Vergel v.*

*INS*, 536 F.2d 755, 757 (8th Cir.1976); *accord Ka Fung Chan v. INS*, 634 F.2d 248, 252 (5th Cir.1981). Here, we have jurisdiction to review only the denial of the motion to reopen because petitioner did not file the petition for review until August 1982, more than six months after the deportation order became final in August 1979, *see Vergel v. INS*, 536 F.2d at 757, and did not exhaust available administrative remedies by failing to appeal the deportation order to the BIA.[5] *See* 8 U.S.C. § 1105a(c); *see, e.g., Jacobe v. INS*, 578 F.2d 42, 44 (3d Cir.1978); *Hernandez v. INS*, 539 F.2d 384, 386 (5th Cir.1976) (per curiam); *Vergel v. INS*, 536 F.2d at 757 n. 2.

Our standard of review of the denial of a motion to reopen deportation proceedings is limited to whether the denial was an abuse of discretion. *See, e.g., Vergel v. INS*, 536 F.2d at 757. Pursuant to its regu-

she] is not unmarried at the time of application for admission into the United States.

**2.** The immigration judge erroneously found that petitioner's mother had misrepresented petitioner's marital status in her alien relative visa petition and that she and petitioner had continued to do so throughout the adjustment of status proceedings. Petitioner's mother accurately described petitioner as her unmarried son in the alien relative visa petition she filed on his behalf in April 1977. Petitioner did not marry until July 1977. The BIA did not address this factual mistake in its order affirming the amended decision of the immigration judge. (The original decision erroneously reported that petitioner had filed his motion to reopen in October 1980 rather than November 1980 and was amended to correct the dates.) This factual mistake does not affect the decision of the immigration judge that 22 C.F.R. § 42.122(d) (1982) and *Corniel-Rodriguez v. INS*, 532 F.2d 301 (2d Cir.1976), did not apply to petitioner.

**3.** In July 1982 petitioner's mother, at that time a citizen of the United States, filed an alien relative visa petition to obtain a fourth preference immigrant visa for petitioner as the married son of a United States citizen. Petitioner also sought waiver of deportation under 8 U.S.C. § 1251(f). At oral argument counsel for INS stated that petitioner had been granted a fourth preference immigrant visa. It appears that the INS denied petitioner's request for waiver under 8 U.S.C. § 1251(f). Brief for Petitioner at 12. Petitioner also sought waiver of deportation in federal district court. That action was later dismissed. *Kiu Young Bae v.*

*Geil,* Civ. No. 80–0271–CV–W–5 (W.D.Mo. Sept. 2, 1982).

**4.** The Ninth Circuit holds that the power to review a final deportation order under 8 U.S.C. § 1105a(a) includes "the power to examine the validity of the rescission order that lies at the base of the deportation order." *Bachelier v. INS*, 625 F.2d 902, 904 (9th Cir.1980); *cf. Menezes v. INS*, 601 F.2d 1028 (9th Cir.1979) (review of denial of adjustment to permanent resident status).

**5.** The Ninth Circuit extends the statutory time for filing petitions for review by holding that if the petitioner files a motion to reopen deportation proceedings within six months of the date of the final deportation order, the motion to reopen tolls the running of the six month period and the petitioner has six months from the date of the denial of the motion to reopen to file the petition for review. *See Bregman v. INS*, 351 F.2d 401, 402–03 (9th Cir.1965). However, if the motion to reopen was not filed within six months of the date of the final deportation order, the court of appeals has jurisdiction under 8 U.S.C. § 1105a(a) to review only whether the denial of the motion to reopen was an abuse of discretion. *See Loza-Bedoya v. INS*, 410 F.2d 343, 346 (9th Cir.1969).

Here, petitioner cannot take advantage of the Ninth Circuit's timeliness exception because petitioner did not file his motion to reopen deportation proceedings until November 1980, more than six months after the date of the final deportation order (August 23, 1979).

lations, *see* 8 C.F.R. § 3.2 (1981), the BIA may grant motions to reopen deportation proceedings if the evidence sought to be offered is material and was not available and could not have been reasonably discovered or presented before. Petitioner argued that, contrary to 22 C.F.R. § 42.122(d), INS officials failed to warn him that marriage would jeopardize his second preference status and that the failure to warn should estop the INS from proceeding with deportation, citing *Corniel-Rodriguez v. INS,* 532 F.2d at 301. The BIA considered petitioner's arguments and affirmed the decision of the immigration judge that this regulation and cited case were inapplicable. We agree with this analysis and find no abuse of discretion in the denial of the motion to reopen deportation proceedings.

■ The Supreme Court has not decided whether affirmative misconduct in a particular case would estop the government from enforcing the immigration laws. *See INS v. Miranda,* —— U.S. ——, 103 S.Ct. 281, 282–84, 74 L.Ed.2d 12 (1982) (per curiam) (adjustment of status); *INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (per curiam) (citizenship); *cf. Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981) (per curiam) (federal insurance benefits). Assuming for the purpose of argument that estoppel is available in immigration cases, "it can only be invoked if the governmental conduct complained of amounts to 'affirmative misconduct.'" *Santiago v. INS,* 526 F.2d 488, 491 (9th Cir.1975) (en banc), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *see INS v. Hibi,* 414 U.S. at 8–9, 94 S.Ct. at 21–22; *Montana v. Kennedy,* 366 U.S. 308, 314, 81 S.Ct. 1336, 1340, 6 L.Ed.2d 313 (1961). *But cf. Santiago v. INS,* 526 F.2d at 495–96 (Choy, J., concurring and dissenting) (semantic problems with use of "affirmative" and "negative" misconduct). The Supreme Court in *Hibi* found a serious breach of duty by INS officials was not affirmative misconduct. 414 U.S. at 7–9, 94 S.Ct. at 20–22. Here, we have no breach of duty because the regulation cited does not apply to petitioner.

■ As explained in *Corniel-Rodriguez,* 22 C.F.R. § 42.122(d) is a State Department regulation that directs consular officials to warn an alien of marriageable age to whom a visa has been issued on the basis of his or her status as a child that he or she will be ineligible for admission to the United States if he or she marries prior to entering the United States. This is because § 101(b)(1) of the Immigration & Nationality Act, 8 U.S.C. § 1101(b)(1), defines the term "child" as "an unmarried person under twenty-one years of age." 532 F.2d at 303 & n. 7 (describing the marriage restriction in the visa context as a "trap for the unwary"). In *Corniel-Rodriguez* a United States consular official in the Dominican Republic had issued the petitioner an immigration visa as the child of a special immigrant. Contrary to the regulation, the official did not warn the petitioner, who was then nineteen years old, that her visa would automatically become invalid if she married before entering the United States. Three days before leaving the Dominican Republic, the petitioner married her childhood sweetheart and thereby lost her status as a "child" and her visa was automatically revoked. The Second Circuit held that the government's failure to warn the petitioner as required by the regulation was affirmatively misleading, *id.* at 306–07, and, in these extraordinary circumstances, deportation would be a "manifest injustice occasioned by the Government's own failures." *Id.* at 307.

As a threshold matter, this regulation is directed to consular officials outside the United States, not to INS officials handling applications for adjustment of status. Under 22 C.F.R. § 42.122(d), INS officials have no duty to warn applicants for adjustment of status that marriage will alter their preference classification for immigration visas. Even if we were to apply the regulation to INS officials, the rationale behind the regulation does not apply to applicants for adjustment of status. The regulation requires consular officials abroad to warn aliens already granted immigration visas as the chil-

dren of United States citizens or of permanent residents about the adverse consequences of marriage before entering the United States. In the adjustment of status process the applicant is already in the United States and thus cannot jeopardize his or her status by marrying *before* entering the United States because he or she has already entered the United States. Further, the approval of an application for adjustment of status is the functional equivalent of the issuance of an immigrant visa. *See generally* C. Gordon & E.G. Gordon, Immigration and Nationality Law ch. 7 (Desk ed. 1981). Because the applicant for adjustment of status is already in the United States, and in fact may be deemed to have abandoned his or her application by leaving the United States,[6] the applicant for adjustment of status is not at risk in the same way that the petitioner was in *Corniel-Rodriguez.* The grant of adjustment of status is effective immediately; the applicant for adjustment of status, unlike the holder of an immigrant visa, is not exposed to an interim period between the issuance of an immigrant visa and actually entering the United States. *Compare Corniel-Rodriguez v. INS,* 532 F.2d at 303–04.

The BIA correctly determined that the regulation at issue did not apply to petitioner. We find no abuse of discretion in the denial of the motion to reopen the deportation proceedings. Accordingly, the petition for review is denied.[7]

---

**6.** *See* 8 C.F.R. § 245.2(a)(3) (1981) (departure without previous permission or unless departure determined to have been unintended or innocent and casual and the absence from the United States was brief).

**7.** Petitioner also asks this court to grant a waiver of deportability under 8 U.S.C.

§ 1251(f). This section as amended in 1981, Act of Dec. 29, 1981, Pub.L. No. 97–116, § 8, 95 Stat. 1616 (1981) (current version in 8 U.S.C.A. § 1251(f) (West Supp.1983), places waivers of deportability within the discretion of the Attorney General.