George and Rosemary WELLINGTON, Appellants,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Appellee.

Nos. 82–2318, 82–2319.

United States Court of Appeals,
Eighth Circuit.

Submitted June 30, 1983.

Decided July 7, 1983.

Bruce D. Goddard, Iowa City, Iowa, for appellants.

J. Paul McGrath, Asst. Atty. Gen., Lauri Steven Filppu, Robert Kendall, Jr., Atty., Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

George and Rosemary Wellington, husband and wife, appeal from the Board of Immigration Appeals' orders affirming the decision of an Immigration Judge finding George deportable as an "overstay," and finding Rosemary deportable for failing to comply with the conditions of her nonimmigrant status and for failing to maintain that status. For reversal George argues that he was denied due process when the Immigration and Naturalization Service (INS) failed to give him timely notice of its denial of an extension of stay. And Rosemary argues that (1) the INS did not meet its burden of proving that she failed to comply with the conditions of her status; (2) the Immigration Judge erred in admitting unauthenticated hearsay evidence against her; and (3) the government should be estopped to argue that she failed to maintain her nonimmigrant status because

her failure to maintain her status resulted from misinformation she received from a State Department employee. We affirm the orders of the Board.

## I.

George and Rosemary are natives and citizens of Nigeria. George entered the United States on September 25, 1976, as a nonimmigrant student (F–1) and was authorized to remain in the country until October 26, 1978. Rosemary entered the country on August 5, 1976, as a nonimmigrant employee of an official accredited to an international organization (G–1). She was authorized to remain for the duration of her employment with the Ambassador of Nigeria to the United Nations.

Rosemary testified that she did work for a time at the Nigerian Embassy. She later decided to stop working and obtain a student visa, so she could attend college. She testified that her Ambassador sent her to talk to someone at the U.S. Mission to the United Nations who allegedly told her that she could attend college without violating her G–1 status.

Meanwhile George had been attending the University of Ohio, and in June of 1978 he received a B.S. degree in industrial technology. Then, on August 28, 1978, he applied for an extension of stay so he could pursue practical training. While the INS was considering George's application, Rosemary learned that she had been admitted to the University of Iowa's nursing program, and they quickly moved to Iowa City. George notified the INS office in Iowa of his change of address. He also arranged to have a friend in Ohio forward his mail. On October 11, 1978, the INS sent George notice that his application had been denied,[1] and advised him to leave the country by November 25, 1978. However, George did not receive this notice until December of 1978, because the Service had mailed it to his Ohio address, and his friend was tardy in forwarding his mail.

Thereafter the INS instituted deportation proceedings against George and Rosemary. After conducting a hearing at which George and Rosemary were represented by counsel, an Immigration Judge found George deportable pursuant to 8 U.S.C. § 1251(a)(2) (1976) as an "overstay," and Rosemary deportable pursuant to 8 U.S.C. § 1251(a)(9) (1976) for failing to comply with the conditions of her status and for failing to maintain her status. The Immigration Judge granted them the privilege of voluntary departure in lieu of deportation. The Board of Immigration Appeals (the Board) affirmed, and this appeal followed.

## II.

### A.  *George's Case*

To establish that a nonimmigrant is deportable as an "overstay," the INS must show by "clear and convincing evidence," *Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966), that he was admitted as a nonimmigrant for a temporary period, that the period has elapsed, and that he has not departed. See *Torabpour v. INS,* 694 F.2d 1119, 1122 (8th Cir.1982); *Tsao v. INS,* 538 F.2d 667, 668 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977). Only the grant of an extension of stay can prevent an overstay from being deportable. See *Torabpour v. INS,* 694 F.2d at 1122.

The INS has clearly established that George is deportable as an overstay. The administrative record demonstrates that George entered the United States on September 25, 1976, as a nonimmigrant student authorized to remain until October 25, 1978. He applied for an extension of stay on August 28, 1978, but his application was denied, and he was advised to leave by November 25, 1978. Hence, from November 25, 1978, to the present, his presence in the country has been unauthorized.

This Court lacks jurisdiction to consider the argument that the INS denied George due process by giving him untimely

---

1. The INS denied George an extension of stay because he failed to apply for practical training within 30 days of his graduation, as required by INS regulations. 8 C.F.R. § 214.2(f)(6a) (1983).

notice of its denial of an extension of stay. George and Rosemary brought this petition under 8 U.S.C. 1105a(a) (1976 & Supp. V 1981), which grants this Court exclusive jurisdiction over final orders of deportation, orders entered during deportation proceedings, and orders incident to a motion to reopen such proceedings. *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212–13, 88 S.Ct. 1970, 1974–1975, 20 L.Ed.2d 1037 (1968); *Tarabpour v. INS,* 694 F.2d at 1121 & n. 8; *Daneshvar v. Chauvin,* 644 F.2d 1248, 1250 (8th Cir.1981). In arguing that he did not receive timely notice, George is attempting to challenge the District Director's decisions to deny him an extension of stay and not to reinstate his student status. These decisions were *collateral* to his deportation proceeding,[2] and hence are not reviewable under Section 1105a(a).

### B. *Rosemary's Case*

As noted by the Board in its decision, the Immigration Judge found Rosemary deportable on two separate grounds: that she failed to comply with a condition of her G–1 status because notice of her status as a diplomatic employee was never sent to the State Department, and that she failed to maintain her status when she left the employ of the Nigerian Ambassador.[3] We affirm on the basis of the second ground, and find it unnecessary to discuss the first. We therefore do not address Rosemary's arguments that the INS failed to prove that she had not complied with the conditions of her status and that unauthenticated hearsay was used against her. Both these points

relate to the first ground on which Rosemary was ruled deportable.

The Immigration Judge found that Rosemary was deportable for failing to maintain her G–1 status because she stopped working for the Nigerian Ambassador. Rosemary contends that the Government should have been estopped to argue that she failed to maintain her status because she detrimentally relied on misinformation given by a State Department employee that she could attend college without violating her G–1 status.

■ Neither the Supreme Court nor this Court has decided whether equitable estoppel can operate against the Government in immigration cases. See *INS v. Miranda,* —— U.S. ——, 103 S.Ct. 281, 282–84, 74 L.Ed.2d 12 (1982) (per curiam); *INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (per curiam); *Kiu Young Bae v. INS,* 706 F.2d 866 (8th Cir.1983). But if estoppel is available in immigration cases, it can be invoked only if the government is guilty of "affirmative misconduct." *Kiu Young Bae v. INS,* 706 F.2d 866.

■ The Board concluded that Rosemary failed to establish affirmative misconduct. It based this conclusion on its factual finding that a misunderstanding had occurred between Rosemary and the employee she spoke to at the U.S. Mission. R. 16.[4] The Board found that the employee must have thought that Rosemary wanted to attend college while remaining employed with the Nigerian Ambassador. A nonimmigrant

---

2. George applied for an extension of stay on August 28, 1978, and the deportation proceeding against him commenced on August 26, 1980, when he was served with an Order to Show Cause. George sought to have his student status reinstated sometime after March of 1979 and probably before he was served with the Order to Show Cause. R. 99–103. George's application for reinstatement of student status had no direct connection with the deportation proceeding.

3. 8 U.S.C. § 1251(a)(9) provides in pertinent part:

   (a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he [or she] was admitted ... *or* to comply with the conditions of any such status....

(Emphasis added.)

4. The Immigration Judge did not consider whether a misunderstanding had occurred, but the Board has the power to review the record *de novo,* and to make its own findings of fact. *Noverola-Bolaina v. INS,* 395 F.2d 131, 135–36 (9th Cir.1968); Harper, *Immigration Laws of the United States* 75 (3d ed. 1975); Wasserman, *Immigration Law and Practice* 24 n. 36 (3d ed. 1979).

with a G–1 status *can* attend school while working for a representative to an international organization.

In reviewing final orders of deportation, courts of appeals must accept as conclusive any findings of fact that are supported by substantial evidence. *Torabpour v. INS*, 694 F.2d at 1122. Substantial evidence exists to support the Board's finding that a misunderstanding occurred. From the testimony Rosemary gave concerning her conversation with the U.S. Mission employee, one could reasonably conclude that a misunderstanding occurred.[5] If a misunderstanding occurred, it is clear that the government did *not* engage in "affirmative misconduct." Therefore, Rosemary's estoppel defense must fail. Even if she had complied with the conditions of her G–1 status, she would still be deportable for failing to maintain that status by leaving the employ of the Nigerian Ambassador.

### III.

The orders of the Board of Immigration Appeals are affirmed. George and Rosemary are deportable, and they may voluntarily leave the United States in lieu of deportation.

---

5. Rosemary stated:
  I started thinking of going into school, going back to study, going back to school—and I applied—when he [the Nigerian Ambassador] got back [from a trip]—I applied, I told him I was going to change my visa so I could change to a student visa, and he gave me a note to ... I cannot remember his name— anyway, he gave me a note to the Natural, the American Mission to United Nations in New York City, and I went to see this guy, and he told me that my visa would allow me to stay here if I wanted to. That I actually had no reason to change to a student visa, so I dropped if from that point. R. 82.