UNITED STATES of America, Appellee,

v.

Homayoun BAZARGAN, Appellant.

No. 92–3058.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1993.

Decided May 11, 1993.

Jeff A. Bredahl, Fargo, ND, argued, for appellant.

Dennis Fisher, Asst. U.S. Atty., Fargo, ND, argued (Gary Annear, Asst. U.S. Atty., on the brief), for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Homayoun Bazargan appeals from his conviction in district court[1] for being an illegal alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5), 924(a)(2). We affirm.

## I.

On October 7, 1988, Bazargan was admitted to the United States as a nonimmigrant student,[2] status F–1, authorized to attend college at the University of Southern Mississippi, in Hattiesburg, Mississippi. From October until December 1988, Bazargan attended the University of Southern Mississippi. In January 1989, Bazargan transferred to

Jackson State University in Jackson, Mississippi, where he attended classes until April 1989. Bazargan concedes that he failed to follow mandatory Immigration and Naturalization Service (INS) procedures when he transferred to Jackson State University. *See* 8 C.F.R. § 214.2(f)(8)(ii).

In May 1989, Bazargan submitted an application requesting asylum to the INS office in Arlington, Virginia. Pursuant to 8 C.F.R. § 208.7, the INS issues an employment authorization to every alien who files a non-frivolous asylum · application and who requests the authorization. As a direct result of his asylum application, the INS issued Bazargan such an employment authorization, which it renewed in 1990, and which expired on May 7, 1991.

In the summer of 1989, Bazargan relocated to Fargo, North Dakota. In November 1989, Bazargan enrolled at Moorhead State University in Moorhead, Minnesota, just across the border from Fargo. Once again, Bazargan failed to follow the mandatory INS procedures in transferring to Moorhead State.

In January 1991, INS Special Agent Robert Gudmestad sent Bazargan a letter requesting him to come to the INS's Fargo office for an interview and to bring his immigration documents with him. On February 5, 1991, Agent Gudmestad met with Bazargan, notified him of the denial of his asylum application, and served him with an order to show cause why he should not be deported. Agent Gudmestad explained the nature of the order to show cause to Bazargan and outlined the allegations contained in it. The allegations were, essentially, that Bazargan had violated the terms of his nonimmigrant alien F–1 student status. Gudmestad explicitly represented to Bazargan that the government considered him to be illegally present in the United States. Gudmestad further explained to Bazargan that the INS would soon hold a deportation hearing before an immigration judge in Bloomington, Minnesota. Gudmestad told Bazargan that he would

---

1. The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

2. A nonimmigrant student is an alien who has no intent of abandoning his permanent residence in his home country, but is present in the United States temporarily for the purpose of pursuing a course of study. *See* 8 U.S.C. § 1101(a)(15)(J).

have to attend and that he had the right to testify and to present witnesses and evidence concerning why the government should not deport him. Gudmestad also informed Bazargan that he could renew his application for political asylum during the deportation hearing. Last, Gudmestad gave Bazargan a list of attorneys whom he could retain to represent him, without charge, at the upcoming deportation hearing.

In May 1991, Joseph Nahon, an agent with the Bureau of Alcohol, Tobacco, and Firearms in Fargo, North Dakota, received a "Report of Multiple Sales or Other Disposition of Pistols and Revolvers," filed by one Neil Scherr of Fargo, showing that Bazargan had purchased two pistols within a period of five business days. Nahon then obtained a National Crime Information Center printout on Bazargan. The printout revealed that Bazargan had been detained by the INS for an immigration violation on February 5, 1991.

On May 7, 1991, Agent Nahon visited Scherr, the licensed firearm dealer who had sold Bazargan the two pistols and had completed the multiple sales form. Scherr confirmed that he had in fact sold Bazargan two Raven MP–25, .25 caliber semi-automatic pistols on April 8, 1991.

Later that same day, Agent Nahon located Bazargan in the vicinity of Moorhead State. Nahon advised Bazargan that he was not under arrest and had no obligation to talk, but requested an interview. The two men proceeded to Bazargan's residence, where Bazargan showed Nahon the two Raven .25 caliber pistols, a Heckler & Koch nine millimeter semi-automatic pistol, ninety-nine rounds of .25 caliber ammunition, and seventy-nine rounds of nine millimeter ammunition. Bazargan also informed Nahon that he had recently sold a Beretta Carcano 6.5 millimeter bolt-action rifle (described in the indictment as a "6.5 caliber") to a man named Jerry in a nearby building. Bazargan then turned the three guns and all of the ammunition over to Nahon.

Subsequent investigation by Agent Nahon revealed that Bazargan had purchased the Heckler & Koch nine millimeter semi-auto-

matic pistol on November 20, 1990, and the Beretta rifle in April 1991.

On June 26, 1991, Bazargan was charged in a five-count indictment with three counts of knowingly making a false and fictitious written statement on a Firearms Transaction Record Form 4473, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(B) (Counts One, Two, and Three), one count of being an illegal alien unlawfully in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2) (Count Four), and one count charging the willful sale and delivery of a firearm by an unlicensed person to an unlicensed resident of another state, in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D) (Count Five). Bazargan filed a motion to dismiss the indictment, and the district court stayed its decision on the motion pending the outcome of Bazargan's asylum application.

On January 15, 1992, Immigration Judge Robert D. Vinikoor granted Bazargan's request for asylum. On March 16, 1992, the district court granted Bazargan's motion to dismiss Counts I through IV of the indictment, based upon the one-page "Memorandum of Oral Decision" in Bazargan's asylum case.

On April 3, 1992, the United States filed a motion for reconsideration of the district court's order of March 16, 1992, based upon Judge Vinikoor's subsequently-issued eleven-page decision. Judge Vinikoor included a footnote stating that Bazargan had been an illegal alien at the time he had left school in Mississippi and had violated the terms of his F–1 student status by not complying with required INS procedures. *See* Oral Decision of Immigration Judge Robert D. Vinikoor of January 15, 1992, at 4, n. 2. The district court granted the United States' motion and vacated its previous order dismissing Counts I through IV of the indictment.

A jury found Bazargan guilty only on Count IV, the charge of being an illegal alien in possession of a firearm. The district court sentenced to Bazargan to five months' imprisonment, with the recommendation that he be placed in a minimum security facility, to be followed by placement in a community treatment center for a period not to exceed

five months, to be followed by a term of two years' supervised release.

## II.

■ On appeal, Bazargan raises two issues: that he was not an illegal alien at the time he possessed the firearms and, in the alternative, that if he was an illegal alien at the time he possessed the firearms, the government cannot prosecute him on the firearms charge because of the defense of "entrapment by estoppel," allegedly arising from the government's issuance of an employment authorization to him. We examine these contentions in turn.

Title 18, United States Code, section 922(g) provides, in pertinent part:

It shall be unlawful for any person

. . . . .

(5) who, being an alien, is illegally or unlawfully in the United States;

. . . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Because the three firearms in this case indisputably were shipped in interstate commerce, the only issue the jury had to determine was whether Bazargan was an alien "illegally or unlawfully in the United States" at the time he bought or possessed the firearms. *See* 18 U.S.C. § 922(g)(5). To resolve this question, we address two subsidiary issues: (1) whether Bazargan, as a nonimmigrant alien F–1 student, became an alien "illegally or unlawfully in the United States" upon failing to follow the INS regulations concerning transferring between schools; and (2) if so, whether Bazargan's employment authorization, which arose from his asylum application and which expired on May 7, 1991, rendered him legally in the United States until its expiration.

A nonimmigrant alien F–1 student who wishes to transfer from the school specified in his visa must satisfy the transfer procedure requirements set forth in 8 C.F.R. § 214.2(f)(8). Title 8 C.F.R. § 214.2(f)(8) re-quires the student to, *inter alia,* (1) obtain a properly completed Form I–20A–B from the school to which he intends to transfer; (2) inform the school that he is currently attending of his intention to transfer; and (3) after completing the student's portion, submit the Form I–20A–B to the new school within fifteen days after the date he begins classes at the new school.

■ A nonimmigrant alien F–1 student becomes an illegal alien subject to deportation by failing to comply with the transfer procedures set forth in the INS regulations. *See Youssefinia v. INS,* 784 F.2d 1254, 1256 (5th Cir.1986); *Mohammadi–Motlagh v. INS,* 727 F.2d 1450, 1453 (9th Cir.1984); *Kavasji v. INS,* 675 F.2d 236, 239 (7th Cir.1982). The requirement of notifying the INS of the school to which the nonimmigrant alien intends to transfer "has been identified by the INS as an essential tool, the lax enforcement of which would severely hamper its obligation to keep track of the thousands of alien students within our borders." *Ghorbani v. INS,* 686 F.2d 784, 786 (9th Cir.1982), *citing Matter of Yazdani,* 17 I & N Dec. 626 (BIA 1981).

If a nonimmigrant alien F–1 student violates his status by failing to follow the transfer procedures set forth in 8 C.F.R. § 214.-2(f)(8)(ii), he may apply to the district director of the INS for reinstatement to student status by following the procedures provided in 8 C.F.R. § 214.2(f)(16). Title 8 C.F.R. § 214.2(f)(16) provides in pertinent part:

Reinstatement to student status—

(i) General. A Service director may consider reinstating an F–1 student who makes a request for reinstatement on Form I–539, Application to Extend Time of Temporary Stay, accompanied by a properly completed Form I–20A–B from the school the student is attending or intends to attend, if the student:

(A) Establishes to the satisfaction of the Service director that the violation of status resulted from circumstances beyond the student's control or that failure to receive reinstatement to lawful F–1 status would result in extreme hardship to the student;

(B) Is currently pursuing ... a full course of study at the school which issued the Form I-20A-B;

(C) Has not engaged in unauthorized employment....

Bazargan admits that he failed to follow the requirements of 8 C.F.R. § 214.2(f)(8) when he transferred to Jackson State from the University of Southern Mississippi in January 1990. Bazargan also concedes that at no time thereafter did he apply to the INS for a reinstatement to his nonimmigrant alien F-1 student status, pursuant to 8 C.F.R. § 214.2(f)(16). Accordingly, we agree with the district court, which properly deferred to the Immigration Judge, in holding that Bazargan's status as a nonimmigrant alien F-1 student lawfully in the United States terminated in early 1990. *See* Oral Decision of Immigration Judge Robert D. Vinikoor of January 15, 1992, at 4, n. 2. As soon as he failed to maintain his F-1 student status, Bazargan became "without authorization to remain in this country," and "in the same position legally as the alien who wades across the Rio Grande or otherwise enters the United States without permission." *United States v. Igbatayo,* 764 F.2d 1039, 1040 (5th Cir.1985).

■ Thus, the next issue before us is whether the INS's grant of an employment authorization to Bazargan as a consequence of his asylum petition made him a legal alien for the purposes of 18 U.S.C. § 922(g)(5) during the period of time that he possessed the firearms. For the purposes of a section 922(g)(5) conviction, "the government must prove that the alien was in the United States without authorization at the time the firearm was received." *United States v. Hernandez,* 913 F.2d 1506, 1513 (10th Cir.1990). Bazargan argues that because the employment authorization "authorized" him to work in the United States until May 7, 1992, he was not "without authorization."

Although the question is a close one, we do not agree with Bazargan's position. Our standard of review " 'is a narrow one, deferential to the agency's interpretation of its own regulations and only permitting reversal if the agency action is without a rational basis.' " *State of Missouri v. United States*

*Dep't of Education,* 953 F.2d 372, 375 (8th Cir.1992), *quoting Education Assistance Corp. v. Cavazos,* 902 F.2d 617, 622 (8th Cir.1990). The Immigration Judge, in the course of granting Bazargan's petition for asylum, held that Bazargan had been an illegal alien at the time he had possessed the firearms and that the application for asylum and the employment authorization had not cured this defect in status. Because we cannot say that this determination was without a rational basis, we uphold the district court's finding that Bazargan was an illegal alien at the time he possessed the firearms.

Bazargan's failure to apply for reinstatement to F-1 status pursuant to 8 C.F.R. § 214.2(f)(16) further supports the district court's holding. The INS has provided this means for nonimmigrant students who, for whatever reason, become illegal by failing to maintain the requirements of their status. Bazargan has failed at any time relevant to this prosecution to apply for a reinstatement. Consequently, Bazargan remained in violation of his student status until January 15, 1992, when his petition for asylum was granted.

Moreover, it would be contrary to the purpose of the immigration laws to permit Bazargan to use one INS regulation, 8 C.F.R. § 208.7, the procedure governing the issuance of employment authorizations to asylum applicants, to defeat another INS regulation, 8 C.F.R. § 214.1(f)(8), requiring the alien to notify the INS of any school transfers. The INS is required to grant an employment authorization to any alien who has requested it and has filed a non-frivolous application for asylum. 8 C.F.R. § 208.7. Such a request is granted routinely, to avoid creating a situation in which the applicant alien must choose either to rely "on friends and relatives for support, to work illegally and risk deportation or adverse action on his asylum application, or, ultimately, to abandon his application for asylum." *Ramos v. Thornburgh,* 732 F.Supp. 696, 699 (E.D.Tex. 1989). Consequently, the grant of an employment authorization is not part of some larger determination by the INS permitting the alien to purchase weapons, regardless of other violations of his status. Indeed, it

would be unreasonable for the employment authorization to erase all violations of an immigrant's status. At the time the INS issues the employment authorization, it has not even fully reviewed the alien's asylum application, but simply has determined it to be non-frivolous. Because the INS does not interpret the employment authorization to have any effect on the alien's status with respect to anything other than his ability to engage in employment during the pendency of his case, we agree with the district court and the Immigration Judge that the employment authorization did not have the effect of converting Bazargan back into a legal alien.

 Last, we consider Bazargan's argument that if we find that he had become an illegal alien at the time he possessed the firearms, the doctrine of "entrapment by estoppel" precludes his prosecution on the section 922(g)(5) charge. Bazargan contends that because the government had issued him an employment authorization permitting him to stay in the United States until it expired on May 7, 1991, the government entrapped him into believing he was lawfully residing in the United States at the time of the charged offense.

The defense of entrapment by estoppel " 'applies when an official tells the defendant that certain conduct is legal and the defendant believes the official.' " *United States v. Long*, 977 F.2d 1264, 1270–71 (8th Cir.1992), *quoting United States v. Austin*, 915 F.2d 363, 366 (8th Cir.1990). We have noted that "[n]either the Supreme Court nor this Court has decided whether equitable estoppel can apply against the Government in immigration cases." *Wellington v. INS*, 710 F.2d 1357, 1360 (8th Cir.1983). If "estoppel is available in immigration cases, it can be invoked only if the government is guilty of 'affirmative misconduct.' " *Wellington*, 710 F.2d at 1360.

The defense of "entrapment by estoppel" has no application to Bazargan's case. At no time did the INS represent to Bazargan that his past failure to maintain his nonimmigrant F–1 student status was forgiven by the employment authorization. The only situation in which Bazargan could conceivably make a colorable estoppel claim with respect to the employment authorization would be if the government had prosecuted him for working during the period of the authorization. Far from reassuring him that he was a legal alien, the INS had served Bazargan with an order to show cause why he should not be deported for violations of his nonimmigrant student F–1 status before he had purchased the firearms. Likewise, Agent Gudmestad had also advised Bazargan orally that the INS considered him illegally present in the United States due to his violation of student status. Accordingly, Bazargan's claim that he was misled by the INS into believing that he was "legally here" for the purposes of purchasing firearms is without merit.

The judgment of the district court is affirmed.