**Shahla GANJOUR, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**Fereidon FATHI–KOUHI–DEHKORDI, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

Nos. 85–4365, 85–4379.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1986.

---

**13.** *See supra* note 4.

Wallace R. Heitman and Randall Dixon Fife, Dallas, Tex., for petitioners.

Edwin Meese, III and William French Smith, Attys. Gen., U.S. Dept. of Justice, Robert L. Bombough, Director, Stewart Deutsch, Eloise Rosas, Richard M. Evans and David V. Bernal, Attys., Allen W. Hausman, Asst. Director, Office of Immigration Litigation, Civil Div., Washington, D.C., David H. Lambert, Dist. Dir., I.N.S., New Orleans, La., William J. Chambers and

Ronald Chandler, Dist. Directors, I.N.S., Dallas, Tex., and John Mitchell Nevins, Asst. U.S. Atty., Dallas, Tex., for respondent.

Before WILLIAMS, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

These two consolidated cases come before us as petitions for review of the denial of applications for asylum, withholding of deportation, and suspension of deportation by the Immigration & Naturalization Service (INS). We uphold the INS's determinations.

**Facts and Proceedings Below**

Our petitioners are Fereidon Fathi-Kouhi-Dehkourdi (Fathi) and Shahla Ganjour (Ganjour). They are husband and wife, and each is a native and citizen of Iran. Fathi last entered the United States on June 17, 1977, as an F–1 nonimmigrant student. Ganjour last entered the United States on July 13, 1979, as the spouse of a nonimmigrant student, with a status dependent on her husband's. *See* 8 U.S.C. § 1101(a)(15)(F)(ii). The couple has one child, a daughter Tamila Fathi, a United States citizen born in Irving, Texas on October 8, 1978. Tamila attended first and second grade at White Rock North School in Dallas, Texas. Fathi has been enrolled in various schools since arriving in this country, including the English Language School in Irving, Texas, Cook County Junior College in Gainesville, Texas, and North Texas State University in Denton, Texas. Fathi received a Bachelor of Science degree in chemistry from North Texas State in 1983.

In order to support himself and his family, Fathi has worked at several jobs while in the United States. He has been self-employed as a taxi driver and has worked as a bartender at two local hotels. Fathi is currently employed as a food and beverage service manager at the Metro Center Hotel. Ganjour is currently working as a manicurist and has held other similar jobs.

On April 8, 1982, the INS in Dallas, Texas issued an order to show cause why petitioners should not be deported under 8 U.S.C. § 1251(a)(9) because Fathi had accepted unauthorized employment in violation of his status as a nonimmigrant student. On May 4, 1982, a deportation hearing was commenced before an immigration judge in Dallas. Petitioners were represented by counsel, as they also were throughout all subsequent proceedings. At the hearing, petitioners admitted the charges against them and conceded deportability. Simultaneously, petitioners filed an application for asylum under 8 U.S.C. § 1158(a). The May 4 hearing was adjourned so that the immigration judge could solicit an advisory opinion from the United States Department of State, Bureau of Human Rights and Humanitarian Affairs (BHRHA) as required by immigration regulation 8 C.F.R. § 208.10.

The BHRHA issued an advisory opinion on April 29, 1983, in which it stated petitioners had failed to provide sufficient information or adequate corroborative material to sustain an asylum claim of well-founded fear of persecution upon return to Iran. The deportation hearing was reconvened and completed before the immigration judge in July 1983. The immigration judge found that petitioners were deportable and denied their request for voluntary departure from the United States because they had failed to designate a country to be deported to. Petitioners' application for asylum under 8 U.S.C. § 1158(a) and their application for withholding of deportation under 8 U.S.C. § 1253(h) were denied.[1] Pe-

---

1. Under immigration regulations, a request for asylum under section 1158(a) made by an alien after the commencement of deportation proceedings is also considered as a request for withholding of deportation under section 1253(h). 8 C.F.R. § 208.3(b). *Accord Immigration & Natu-* *ralization Service v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 2496 n. 13, 81 L.Ed.2d 321 (1984). Although the request for asylum triggers the withholding of deportation request, these are two separate requests and are reviewed independently. *Stevic, supra.*

titioners appealed the immigration judge's decision to the Board of Immigration Appeals (BIA) in August 1983. The BIA rendered a decision on April 18, 1985 in which it denied asylum under section 1158(a) and held that petitioners had not met their burden of proof of establishing a well-founded fear of persecution based upon their race, religion, political opinion, membership in a social group, or nationality. The BIA further denied petitioners' request for withholding of deportation under section 1253(h). The BIA did, however, sustain petitioners' appeal for voluntary departure and petitioners were granted thirty days in which to depart from the United States.

On May 17, 1985, Fathi filed an application for suspension of deportation with the INS in Dallas, Texas, as provided for under 8 U.S.C. § 1254(a)(1).[2] Simultaneously with the application for suspension of deportation, Fathi filed an amended application for asylum and a motion to reopen and reconsider the order of deportation based on the application for suspension of deportation and amended application for asylum and the request for withholding of deportation. Fathi also requested the district director of the Dallas INS to stay his deportation during the pendency of the motion to reopen and reconsider. On May 20, 1985, the Dallas INS office sent both petitioners notice that they should report to the United States Immigration Office on May 30 and that they would be deported to Iran at the United States government's expense. On the same date, petitioners were notified that Fathi's request for stay of deportation had been denied.

On May 22, Fathi asked the BIA to stay his deportation during the pendency of his motion to reopen and reconsider. On June 4, Fathi filed an application for a writ of habeas corpus and an application for stay of deportation in the United States District Court for the Northern District of Texas. The BIA, on June 5, 1985, denied Fathi's motion to reopen and reconsider or consider his withholding of deportation and asylum applications, and his request for suspension of deportation. The BIA stated that the evidence sought to be offered could have been presented at a former hearing and that Fathi had failed to demonstrate *prima facie* eligibility for the relief requested. On June 7, counsel for Fathi filed a motion to dismiss the petition for writ of habeas corpus because the issuance of the BIA's opinion mooted the stay request. Ganjour did not move to reopen the deportation proceedings but instead filed an appeal with this Court on May 29, 1985. On June 5, 1985, Fathi filed a similar appeal with this Court.[3]

### Discussion

Ganjour bases her claims for asylum and withholding of deportation primarily upon the persecution claims involving her husband. Unlike Fathi, she filed no motion to reopen; nor did she attempt to seek suspension of deportation. We will discuss the issues concerning each case primarily in regard to Fathi's more inclusive claims.

### *Asylum Claim*

At the initial deportation hearing, after he conceded deportability, Fathi (and Ganjour) applied for asylum. Under section 1158(a), the Attorney General "may" in his "discretion" grant asylum to an alien who is physically present in the United States if the alien meets the statutory definition of a refugee.[4] A refugee is defined as one who

---

**2.** To be eligible for suspension of deportation, the alien must have had a continuous presence in the United States for seven years. Because Fathi had not accumulated the requisite seven years at the time of the initial hearing, he could not move for suspension of deportation until June 1984. Although it may be questioned whether the seven-year period should accumulate after orders of deportation are issued, *cf. INS v. Rios-Pineda,* 471 U.S. 444, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985), the INS does not

dispute the seven-year requirement here, and therefore that issue is not before us.

**3.** On July 25, petitioners filed a motion to consolidate their cases, which was not opposed by the INS, and which we subsequently granted.

**4.** The Attorney General is authorized to delegate his powers under 8 U.S.C. § 1103. By regulation, the Attorney General has delegated his authority to the Commissioner of the INS, 8 C.F.R. § 2.1, and in turn to immigration judges,

is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). The granting of asylum is expressly at the discretion of the Attorney General. *Youssefinia v. INS,* 784 F.2d 1254, 1260 (5th Cir.1986). This Court cannot disturb a denial of such discretionary relief "absent a showing that such action was arbitrary, capricious, or an abuse of discretion." *Id.* at 1260 (quoting *Young v. United States Department of Justice, I.N.S.,* 759 F.2d 450, 455 n. 6 (5th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985)).

■ The standard for granting asylum is a "well-founded fear of persecution," 8 U.S.C. §§ 1158(a) and 1101(a)(42)(A), and the petitioner has the burden of showing that the standard has been met. 8 C.F.R. § 208.5. *Accord, Youssefinia, supra,* at 1260. Well-founded fear of persecution is not defined in the statutes. In *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), the Supreme Court declined to decide the meaning of "well-founded fear of persecution" but suggested that a moderate interpretation of the standard would require a showing that persecution is "a reasonable possibility." *Id.* 104 S.Ct. at 2498. Since *Stevic,* the courts of appeals have diverged on the question of whether the well-founded fear standard is the same as or more lenient than the clear probability standard, which the Court defined in *Stevic* as "more likely than not that the alien would be subject to persecution." The Ninth Circuit has held that the well-founded fear standard has subjective components of genuine fear and objective components that persecution is a reasonable possibility. *Cardoza-Fonseca v. INS,* 767 F.2d 1448, 1452 (9th Cir.1985), *cert. granted,* — U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). The Seventh Circuit applies a similar standard holding that well-founded fear requires good reason to

fear persecution or that persecution is a reasonable possibility. *Carvajal-Munoz v. INS,* 743 F.2d 562, 574 (7th Cir.1984). By contrast, the Third Circuit has held that the well-founded fear standard and the clear probability standard are equivalent. *Sankar v. INS,* 757 F.2d 532 (3d Cir.1985). On the three previous occasions the question has been before us, we have found that petitioners failed to demonstrate a well-founded fear of persecution under even the more generous standard. *See Bahramnia v. INS,* 782 F.2d 1243 (5th Cir.1986); *Youssefinia, supra; Young, supra.* Once again this Court need not address the question specifically as we find that even assuming *arguendo* that the less stringent standard applies, the BIA did not abuse its discretion in denying asylum.

In its initial action affirming the immigration judge, the BIA stated that petitioners each failed to present sufficient evidence to demonstrate a well-founded fear of persecution upon return to Iran based upon race, religion, political opinion, membership in a social group, or nationality. To clear up any confusion regarding the standard, the BIA stated that its conclusions were the same whether petitioners were to demonstrate a "clear probability, a realistic likelihood, a reasonable possibility, or a good reason to fear persecution." In his initial claim for asylum, Fathi focused primarily on his actions in the United States that he argued would result in persecution upon return to Iran. Specifically, Fathi relied on his involvement in the United States in an anti-Khomeini group, the Mujahadeen Khagh. Fathi's involvement with Mujahadeen Khagh appears to have been informal and somewhat spasmodic, and does not indicate that he would likely be brought to the attention of the Khomeini government. Fathi testified that he collected money from friends for worthy projects of the organization and he appeared at two demonstrations. In the demonstrations he was one of approximately fifty people carrying signs, and did nothing to specifically call attention to himself.

8 C.F.R. § 242.8(a). Their decisions are reviewable by the BIA. 8 C.F.R. § 242.21.

*Compare Zavala-Bonilla v. INS,* 730 F.2d 562 (9th Cir.1984) (active involvement in labor union prior to fleeing country including bringing about work stoppage, distributing leaflets, picketing, and confrontation with state police). In addition, Fathi claimed that pro-Khomeini supporters in the United States had threatened his family. He only gave details regarding disagreement in political discussions and phone calls in which the caller spoke in Farsi. There was no · showing that any involved were likely Iranian governmental agents. Neither he nor Ganjour gave specifics of any serious threats.

Fathi also submitted numerous articles detailing the general conditions in Iran, including political persecutions. General information on conditions in a country is relevant when it is used to support specific information relating to the alien's well-founded fear of persecution. *Zavala-Bonilla, supra,* at 564. Here, however, Fathi did not provide enough specific information regarding his fear of persecution. Even under the more generous standard, the petitioner "must present *specific* facts through objective evidence if possible, or through his or her own persuasive, credible testimony, showing actual persecution or detailing some other good reason to fear persecution...." *Carvajal-Munoz, supra,* at 576. Fathi presented neither. The BIA's determination of insufficient evidence was not arbitrary and capricious. *Cf. Shoaee v. INS,* 704 F.2d 1079, 1084 (9th Cir.1983) (Iranian student's action in "vehemently" speaking out against the Khomeini regime, and his studies in the west, coupled with his father's loss of civil service pension and brother's loss of job and restriction of travel for medical reasons, were not such that the BIA abused its discretion in denying asylum even under the Ninth Circuit's "more generous standard" of well-founded fear).

### The Withholding of Deportation

■ The Attorney General is to withhold deportation of an alien to any country where, in the Attorney General's opinion, the alien would be subject to persecution on account of race, religion, or political opinion. § 1253(h). Unlike the asylum claim, the withholding of deportation is not a discretionary action if in the Attorney General's opinion the alien will be be subject to persecution. Determinations regarding the likelihood of persecution are judged under a clear probability standard. The United States Supreme Court has defined clear probability as "whether it is more likely than not that the alien would be subject to persecution." *Stevic, supra,* 104 S.Ct. at 2498. Petitioner's claim for withholding of deportation is based on the same activities as his asylum claims. Since we find that the BIA did not abuse its discretion in determining that Fathi failed to meet the more generous test of well-founded fear, *a fortiori* it did not abuse its discretion in determining that he failed to meet the more, or at least not less, stringent standard of clear probability of persecution.

### Motion to Reopen

After retaining new counsel, Fathi, subsequent to the BIA's decision, filed in May 1985 a motion to reopen to apply again for asylum and withholding of deportation and to make an application for suspension of deportation.[5]

■ *Granting of Asylum and Withholding of Deportation.* The immigration statutes contain no provision for the reopening of a deportation or related proceedings. However, the regulations allow for reopening provided that the information sought to be presented could not have been discovered at the time of the original hear-

---

5. Fathi was not eligible to make application for suspension of deportation until he had been in the country for seven years, which did not occur until June 17, 1984, about ten months after the immigration judge's final decision and a like time before the BIA's April 1985 affirmance of that decision. *See* note 2, *supra.* Ganjour did not file a motion to reopen or seek suspension of deportation.

ing. 8 C.F.R. § 3.2.[6] The requirements for reopening were strictly construed by the Supreme Court in *INS v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981). The primary information that Fathi attempted to present in his motion to reopen does not meet these requirements. His primary information is that he is of Kurdish descent and that he has information his family members in Iran have been harassed. Obviously, the fact that he was of Kurdish descent was known prior to the initial hearing, and Fathi does not claim otherwise. The information regarding harassment of family members was based on a telephone call he received from his sister in February 1981. Again, this information was prior to the initial immigration hearing and appeal to the BIA. The other information Fathi seeks to present, his participation in additional protest rallies and an altercation with one whom he merely supposed was a Khomeini spy, is cumulative and not the type of information requiring reopening.

Aside from these questions of timeliness, the Supreme Court has held that a motion to reopen should be granted only if the alien establishes his *prima facie* eligibility for the relief he seeks. *Wang, supra,* 101 S.Ct. at 1029. The Supreme Court stated that BIA denials of reopening are not to be casually reversed since "the Government has a legitimate interest in creating official procedures for handling motions to reopen deportation proceedings so as readily to identify those cases raising new and meritorious considerations." *Id.* at 1301. Therefore, we review the BIA's determination not to reopen only for an abuse of discretion.

Petitioner claims that he has never had a full and fair hearing on the issue of his persecution due to his Kurdish descent. Petitioner alleges that his name shows that he is of Kurdish descent and this is not disputed. However, there is no evidence that he is within the group of Kurds, as defined by the State Department, who have been persecuted. Although Fathi gives the name of his birthplace, it is not alleged that it is in or near Kurdestan, the general area of the persecution. Prior to coming to this country he lived not in Kurdestan but in Teheran. Nor was it shown that his family was living in or near Kurdestan. While there is evidence in the record that Kurds speak a different primary language from other Iranians, Fathi alleges only that he speaks English and Farsi. Given this weak showing that Fathi is so closely aligned with the Kurds that he would be persecuted, it was not an abuse of discretion for the BIA to deny reopening. Doubt is also cast on this claim by reason of its being so belatedly raised, for which there was no adequate explanation.

*Suspension of Deportation.* Fathi also brought a motion to reopen before the BIA in May 1985, seeking suspension of deportation under section 1254(a)(1). If an alien has been continuously physically present in the United States for a period of not less than seven years immediately preceding the application, is of good moral character, is not otherwise deportable under criminal statutes, and is a person whose deportation would "in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States," the Attorney General has discretion to suspend deportation. As of June 17, 1984, Fathi had been present in the United States for a period of seven years, and in his May 1985 motion he claimed hardship to himself and to his United States citizen daughter.

Under *Wang, supra,* in order to reopen, the alien must make a *prima facie* showing under the statute. The INS does not deny that Fathi met the seven-year residence requirement and is of good moral character. However, the BIA held that he

6. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the formal hearing." Further, 8 C.F.R. § 3.8(a) provides that "[m]otions to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material."

failed to make a *prima facie* showing of extreme hardship. The decision whether to suspend the deportation of an alien who satisfies the statutory requirements is discretionary and, therefore, is subject to a restricted judicial review. *Ramos v. INS,* 695 F.2d 181, 184–85 (5th Cir.1983). While the physical presence and good moral character requirements are factual matters, the findings concerning which must be supported by reasonable evidence, the requirement of extreme hardship is phrased in terms of "in the opinion of the Attorney General," rather than simply in terms of the ultimate standard itself. § 1254(a)(1). In *Wang, supra,* the Supreme Court stated that the act commits the definition of extreme hardship in the first instance to the Attorney General, and his delegates have the authority to construe extreme hardship narrowly if they choose to do so. *Wang, supra,* 101 S.Ct. at 1031. Although our review is limited after *Wang,* judicial review remains available to ensure that an alien denied relief under suspension of deportation has had a full and fair consideration of his claim, which includes consideration of all relevant factors. *Ramos, supra,* at 185–86; *Prapavat v. INS,* 638 F.2d 87 (9th Cir.1981), *aff'd on reh'g,* 662 F.2d 561, 562 (1982) (remand to the BIA because of failure to consider all factors relevant to the extreme hardship determination).

■ We have summarized the factors generally relevant in determining extreme hardship as follows:

"We do not believe that Congress intended the immigration courts to suspend the deportation of all those who will be unable to maintain the standard of living at home which they have managed to achieve in this country.... It is only when other factors such as advanced age, illness, *family ties,* etc. combine with economic detriment that deportation becomes an extreme hardship." *Ramos, supra,* at 186 (quoting *Bueno-Carrillo v. Landon,* 682 F.2d 143, 146 (7th Cir. 1982)).

In requiring the BIA to consider all the relevant evidence, we mean that the BIA must show it has meaningfully addressed and reached a reasoned conclusion based on the evidence supporting the alien's specific assertions of hardship. *Ramos, supra,* at 188. We do not require the BIA to give an extended discussion of evidentiary minutiae, but merely a sufficient indication that it has a fair understanding of the alien's relevant contentions of hardship which are supported by the evidence. *Id.* at 189. We have stated that we lack the authority to determine the weight given each of the factors, *Sanchez v. INS,* 755 F.2d 1158, 1162 (5th Cir.1985), that our review is restricted to determining if the BIA gave consideration to a limited range of factors, and that we are not free to narrow the BIA's discretion by dividing these factors into subfactors. *Id.* at 1160. Moreover, even if we had some substantive abuse of discretion type review, we would not reverse the BIA here.

■ After careful review of the BIA's findings in this case, we cannot say it failed to consider all the appropriate factors. The BIA looked at the hardship to the alien in terms of his fear of persecution, and also considered the hardship to the child of moving to Iran. Although it is always hard on a minor child when its parents are deported because the child must either be separated from the parents or adjust to a new culture, this is not the type of factor that necessarily requires a finding of extreme hardship. *Osuchukwu v. INS,* 744 F.2d 1136, 1142 (5th Cir.1984). There is no indication in the record that the child does not speak Farsi or that she would have more than the usual problems of a young child in adjusting to life in a new country which is that of its parents' citizenship, nativity, upbringing, and family. *Compare Ramos, supra* (psychiatric evidence on effect of move on United States citizen children; and children did not speak language of country to which parents deported). The burden of proof is on the alien to tender adequate evidence regarding extreme hardship, *id.* at 1142, and Fathi has not done so.

Fathi also complains that the BIA did not consider all the factors cumulatively. However, there is language in the BIA's opinion which indicates that it did consider all the factors cumulatively. Therefore, it has met our standard under *Ramos, supra. Cf. Sanchez, supra,* at 1162 (language in record that the judge considered all arguments and made determination only on those that he considered nontrivial does not support petitioner's claim that immigration judge did not consider all the facts cumulatively).

Careful review of the BIA's opinion indicates that it did not abuse its discretion in denying Fathi's motion to reopen or to entertain his suspension of deportation claim. On review of denial of the motion, we look only to see if there has been an abuse of discretion. *Osuchukwu, supra,* at 1141–42. We find none here.

### Ganjour's Claim

■ Ganjour's claim appealing the BIA's denial of asylum and withholding of deportation is based on the activities of her husband Fathi. As we have found that Fathi failed to prove an abuse of discretion in the BIA's denial of his claims for asylum and withholding of deportation, we also find that Ganjour failed to do so. Ganjour did not file any motion to reopen; nor did she attempt to seek suspension of deportation under section 1254(a)(1). We affirm the BIA's action as to her also.

### Conclusion

We find that the Board of Immigration Appeals did not abuse its discretion either in its initial denial of petitioners' applications for asylum and withholding of deportation, or in its subsequent refusal of Fathi's motion to reopen for reconsideration of his asylum and withholding claims and for consideration of his new suspension of deportation claim. Therefore, we affirm the order of the Board of Immigration Appeals in each case.

AFFIRMED.