United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 04-61166
Summary Calendar

**PAUKMANSAUN, also known as Vanlalchhuana Paihte, also known as
Pau Khan Suan,**

                                                      Petitioner,

versus

**ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,**

                                                      Respondent.

**Petition for Review of an Order of the
Board of Immigration Appeals
(A78 318 173)**

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    Paukmansaun seeks review of the decision of the Bureau of
Immigration Appeal (BIA), which affirmed the Immigration Judge's
(IJ) denial of applications for asylum, withholding of removal, and
protection under the Convention Against Torture (CAT).

    Paukmansaun was born in Burma in 1973 and lived there before
fleeing to India in March 2002.  He is Chin, a distinct minority in
Burma.  Paukmansaun, like nearly all members of the Chin group, is
Christian.  Overall, Burma is made up of approximately 90%

────────────────

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Buddhists, 4% Muslims, and 4% Christians.  Paukmansaun claims that in Burma he was a member of the Assembly of God Church, where he also served as a youth leader; and that he is a supporter, though not an official member, of the Chin National Front (CNF), a group devoted to restoring democracy to Burma.

In 1999, Paukmansaun began to travel across the border from Burma to India to get Bibles for his church members.  Burma bans all Bibles not published within its borders, though Bibles published in Burma are legal.  On his Bible-smuggling trips, Paukmansaun also smuggled to his friends written materials published in India by the CNF.  Paukmansaun made his final smuggling trip in March 2002.

Paukmansaun claims that, upon returning to Burma in March 2002, he was accosted by members of military intelligence, who heard him knocking at a friend's door.  The soldiers told Paukmansaun he was violating curfew and would have to pay a fine. Paukmansaun says the soldiers found his Bibles and began to hit him with their weapons, causing him to bleed profusely; they took his ID card and told him to come to their office the next morning. Fearing he would be beaten if he reported to the military intelligence office, and knowing he could not travel in Burma or return home without his ID card, Paukmansaun returned to India.

Eventually, Paukmansaun decided he needed to leave India; because Chins are not considered refugees by the Indian government, Paukmansaun feared he would be sent back to Burma if discovered.

2

Therefore, he paid $4,000 to travel to Mexico with a group of Burmese Chins; eventually, he came to the United States, entering in July 2002.

During the hearing before the IJ, Paukmansaun introduced into evidence a letter written on his behalf by Dr. Suikhar, a CNF leader. The letter stated Dr. Suikhar knew Paukmansaun personally and that Paukmansaun was a formal member of the CNF. Paukmansaun admitted in his testimony, however, that neither statement was true. In addition, Dr. Suikhar's letter incorrectly stated the Burmese military learned about Paukmansaun's trips to India after it was leaked to them; Paukmansaun contends the military stumbled upon him after he violated curfew. Finally, Paukmansaun's testimony from the IJ hearing indicates the CNF will provide a letter on behalf of any Chin seeking asylum. The IJ determined Dr. Suikhar's letter was not credible.

The IJ held Paukmansaun's testimony was not credible in the light of: (1) Dr. Suikhar's inaccurate letter, introduced by Paukmansaun; (2) Paukmansaun's testifying he held a job in a restaurant approximately 700 miles from where he lived (in Dallas); and (3) Paukmansaun's first claiming he decided to come to the United States when he was in Mexico but then testifying that, before leaving India, he planned to apply for asylum in the United States. (The IJ also held Burma did not engage in religious persecution by prohibiting the transportation of Bibles across its borders "because Bibles were available...if they were printed in

3

Burma" and because "a country has the right to control what goes across its borders".)

The IJ denied Paukmansaun's asylum application and determined that, because he failed to establish his eligibility for asylum, he necessarily failed to establish eligibility for the "more onerous" standards required for withholding of removal or relief under the CAT. The BIA affirmed without opinion the IJ decision.

The Attorney General has discretion to grant asylum. 8 U.S.C. § 1158(b)(1)(A). A refugee is someone in the United States who is unable or unwilling to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion". 8 U.S.C. § 1101(a)(42)(A). Persecution is defined as harm or suffering inflicted to punish a person for holding a certain belief or characteristic. *Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994). An applicant is eligible for asylum if he establishes a reasonable person in the same circumstances would fear persecution. *Rojas v. INS*, 937 F.2d 186, 189 (5th Cir. 1991).

An applicant is eligible for withholding of removal if he shows a clear probability of persecution. *Id*. The Attorney General must grant withholding of removal if an applicant shows such probability. *Ganjour v. INS*, 796 F.2d 832, 837 (5th Cir. 1986).

4

An applicant for asylum or withholding of removal must present specific, detailed facts, showing he was singled out for persecution, as well as a particularized connection between the applicant's race, religion, nationality, or other listed characteristic. *Id*.

For relief under the CAT, the applicant must show it is more likely than not he will be tortured if sent back to his home country. *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 354 (5th Cir. 2002). Torture is an "extreme form of cruel and inhuman treatment". 8 C.F.R. § 1208.18(a)(2). Torture need not be based on a particular view or characteristic. *Amanfi v. Ashcroft*, 328 F.3d 719, 725 (3d Cir. 2003). Acts are not considered torture under the CAT unless they are done by or with the approval of the government. 8 C.F.R. § 1208.18(a)(1).

Ordinarily, we review only BIA decisions; we consider the IJ decision only if it impacted the BIA decision. *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). In this instance, however, we review the IJ's findings because the BIA affirmed without opinion the IJ decision. The IJ decision must be upheld unless the evidence *compels* the opposite outcome. *See* *Jukic v. I.N.S.*, 40 F.3d 747, 749 (5th Cir. 1994).

If no adverse credibility determination is made, an asylum-seeker has a rebuttable presumption of credibility on appeal. 8 U.S.C. § 1158(b)(1)(B)(iii). Here, however, the IJ made an adverse

credibility finding. Our judgment cannot be substituted for that of the IJ for credibility determinations. *Chun v. I.N.S.*, 40 F.3d 76, 79 (5th Cir. 1994). The IJ's credibility determination was reasonable in the light of Paukmansaun's conflicting testimony and Dr. Sukhair's inaccurate letter.

Paukmansaun failed to provide any evidence of past persecution or fear of future persecution other than his testimony and Dr. Sukhair's letter, both of which were deemed not credible. Therefore, Paukmansaun failed to provide the necessary specific, detailed facts, showing he was singled out for persecution, as well as a particularized connection between the applicant's race, religion, nationality, or other listed characteristic. *See Ganjour*, 796 F.2d at 837. Because Paukmansaun failed to demonstrate eligibility for asylum, he necessarily failed to satisfy the higher burden required for withholding of removal or relief under the CAT. *Efe*, 293 F.3d at 906.

*DENIED*