United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

No. 05-60087
Summary Calendar

---

JAHANGIR NAZARALI BUDHWANI,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

---

Petition for Review of an Order of the
Board of Immigration Appeals
(A78 141 763)

---

Before BARKSDALE, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:*

    Jahangir Nazarali Budhwani seeks review of the Board of Immigration Appeals' (BIA) affirmance of the denial by an Immigration Judge (IJ) of his petition for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and withholding under Article 3 of the United Nations Convention Against Torture (CAT). Budhwani also contests the IJ's denial of his requests for a continuance in the light of his pending labor certification application.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On 16 October 2003, the IJ denied Budhwani's petition for withholding; the BIA affirmed, essentially without additional analysis, on 24 January 2005. Previously, on 6 May and 16 October 2003, the IJ had orally denied two motions for continuance to allow Budhwani's pending labor certificate application to proceed.

Budhwani was born in India on 18 February 1964; he arrived in the United States, illegally, on or about 22 July 1996. Budhwani is married with one child; his daughter is a United States citizen; his wife is a native and citizen of Pakistan who also entered the United States illegally.

Budhwani's entire family is Shi'a Muslim. While in the United States, Budhwani converted to the Sunni faction of Islam. He claims that, if he returns to India: (1) his family will shun him because of his new faith; (2) Hindus will persecute him because he is Sunni; and (3) the Sunni community will not trust him because he is a convert, and will therefore not be willing/able to protect him.

Budhwani also claims: the Shi'a community in India has no problems because they follow Hindu customs and blend in with their Hindu neighbors, but the same does not apply to Sunnis. He says that, as a Sunni, his faith will not allow him to do certain things he would need to do to survive in India. For example, Budhwani would no longer be able to bribe officials, which he claims is a customary Shi'a practice; and, his wife would not be willing to change her dress. Budhwani also says he will be persecuted because

2

he is married to a Pakastani woman.  He claims his wife will not be able to live with him in India because she would be identified as Pakistani and seen as a traitor, and that his religion does not allow him to live apart from her.  Budhwani states that, in India, his daughter will be persecuted because she is a Shi'a convert and the daughter of a Pakastani.

Budhwani has Muslim friends who have been beaten or detained by the police on account of their religion.  In addition, the State Department Country Reports on Human Rights Practices in India for the Year 2002 states that violence by Hindu extremists against Muslims and other religious minorities is not uncommon, and that it often goes unpunished by the state and local governments charged with maintaining law and order.  That report also states the central government generally respects religious freedom.  Although Budhwani had two interactions with the police in India, neither was related to his religion, and neither resulted in detention or persecution of any kind.

Budhwani claims:  (1) the evidence compels reversal of the decision denying him withholding of removal and withholding under the CAT; and (2) we should reverse denials of his motions for a continuance.  Ordinarily, we review only BIA decisions; we consider the IJ decision only if it impacted the BIA decision.  *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002).  Here, we review the IJ's findings because the BIA affirmed, essentially without

3

additional analysis, the IJ decision.  We must uphold the IJ decision unless the evidence *compels* the opposite outcome.  *See Jukic v. I.N.S.*, 40 F.3d 747, 749 (5th Cir. 1994).

An applicant is eligible for withholding of removal if he shows a clear probability of persecution. *Rojas v. I.N.S.*, 937 F.2d 186, 189 (5th Cir. 1991).  Persecution is defined as harm or suffering inflicted to punish a person for holding a certain belief or characteristic.  *Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994).  An applicant for withholding of removal must present specific, detailed facts, showing he was singled out for persecution, as well as a particularized connection between the applicant's race, religion, nationality, or other listed characteristic.  *Ganjour v. I.N.S.*, 796 F.2d 832, 837 (5th Cir. 1986).  The Attorney General must grant withholding of removal if an applicant shows a clear probability of persecution.  *Id*.

For withholding under the CAT, the applicant must show it is more likely than not that he will be tortured if sent back to his home country.  *Ontunez-Torsios v. Ashcroft*, 303 F.3d 341, 354 (5th Cir. 2002).  "Torture is an extreme form of cruel and inhuman treatment." 8 C.F.R. § 208.18(a)(2).  It need not be based on a particular view or characteristic. *Amanfi v. Ashcroft*, 328 F.3d 719, 725 (3d Cir. 2003). Acts are not considered torture under the CAT unless they are done by, or with the approval of, the government. 8 C.F.R. § 208.18(a)(1).

4

Budhwani testified:  if returned to India, he will be turned away by his family and no longer protected from the Shi'a community; he would be targeted by that community as a traitor. When asked what the Shi'a community would do to target him, Budhwani testified that, if there were Hindu-Muslim riots, he would be turned over by Shi'a leaders to the police as a scapegoat.  He testified that he would also be persecuted by Hindus because he is a Muslim.  Although the IJ did not make an adverse credibility determination, he did hold that Budhwani failed to demonstrate a clear probability of persecution if he returns to India.

The State Department report on India demonstrates some level of religious persecution of Muslims.  Budhwani, however, has never been persecuted.  Although he claims he will no longer be welcomed by his family or protected from the Shi'a leaders, the record does not *compel* a determination that Budhwani has established a clear probability of persecution.

In addition, Budhwani contends the IJ improperly failed to consider India's country conditions when denying withholding of removal.  The IJ must consider country conditions, particularly when addressing eligibility for relief under the CAT.  ***Efe,*** 293 F.3d at 903.

The IJ did not fail to consider conditions inside India.  The IJ's opinion discusses:  (1) that state and local governments in India only partially respect religious freedoms; (2) that Budhwani

5

testified that Shi'a leaders have good relationships with the authorities that Sunnis do not have; and (3) that Muslims are a minority in India. The IJ weighed those factors against: (1) India's central government generally respecting religious freedoms; and (2) Budhwani having previously lived in India without any problems. The IJ concluded Budhwani failed to establish he was likely to be persecuted or tortured in India. Again, the record does not *compel* the opposite conclusion.

Budhwani sought continuances from the IJ in order to petition to adjust his status to that of legal resident alien, pursuant to 8 U.S.C. § 1255(i). That section provides: an illegal alien may apply for adjustment of status if he filed a petition for "labor certification ... pursuant to the regulations of the Secretary of Labor on or before [30 April 2001]". 8 U.S.C. § 1255(i)(1)(B)(ii). The Attorney General may grant adjustment of status if the alien is eligible to receive a visa and is admissible for permanent residency; and if a visa is immediately available when the application was filed. *Id*. § 1255(i)(2).

Budhwani claims the IJ abused his discretion in denying his continuance motions in the light of his pending labor certification. The Government claims: we lack jurisdiction to review the IJ's decision because that decision is left to the IJ's sound discretion; and, even if we have jurisdiction, the IJ did not abuse his discretion.

6

INA § 242(a)(2)(B), codified at 8 U.S.C. § 1252(a)(2)(B)(ii), precludes judicial review of certain decisions left to the Attorney General's discretion. The Government incorrectly claims that statute bars review of *all* decisions left to the Attorney General's discretion. ***Zhao v. Gonzales***, 404 F.3d 295, 303 (5th Cir. 2005)(holding 8 U.S.C. § 1252(a)(2)(B)(ii) bars review only of decisions made pursuant to "discretionary authority *specified in the statute*")(emphasis in original). Because the discretion to grant or deny continuance motions is authorized by regulation, we retain jurisdiction to review such decisions. ***Manzano-Garcia v. Gonzales***, 413 F.3d 462, 467 (5th Cir. 2005).

Budhwani claims he is eligible to apply to adjust his status to legal permanent resident because: (1) he benefits from a labor certificate filed before 20 April 2001; (2) but for the Department of Labor's delay in processing the labor certificate, he would immediately apply for residency; and (3) employment visas are immediately available.

Budhawni filed a written motion for continuance on 16 October 2003, which also claimed visas were immediately available. The attorney who filed that motion did not represent Budhwani in the proceedings before the IJ. On two occasions, including once on 16 October 2003, two attorneys for Budhwani orally informed the IJ that no visas were currently available; the Government made a similar representation. The record is unclear on whether the IJ

7

ever saw the 16 October 2003 continuance motion, although it appears he might have. Even if the IJ did see that motion, in the light of what was at best conflicting evidence regarding the availability of visas and thus Budhwani's eligibility to apply for adjustment of status, it was not an abuse of discretion for the IJ to hold Budhwani did not show the good cause required for a continuance. *See* 8 C.F.R. § 1003.29.

Finally, Budhwani claims the denial of his continuance motions raises "serious equal protection and due process issues" because it treats him differently from others who are eligible for immediately available visas and whose motions for continuance are granted. It is questionable, however, whether Budhwani was ever eligible for an immediately available visa when he moved for a continuance. Budhwani claims: "Any distinction between immediately available pending visa adjudications ... under 8 U.S.C. § 1255(i) would be irrational". That, however, is exactly what the statute permits when it gives the Attorney General discretion to grant or deny adjustment of status to § 1255(i) applicants. This exercise of discretion is certainly not a constitutional violation.

*DENIED*