# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 2, 2010

No. 09-60483

Lyle W. Cayce
Clerk

JIANNONG JIANG,

Petitioner

v.

ERIC HOLDER, Jr., UNITED STATES ATTORNEY GENERAL,

Respondent

Petition for Review of a Final Order
of the Board of Immigration Appeals
BIA No. A098 215 496

Before KING, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Jiannong Jiang ("Petitioner") petitions for review of a final order of the
Board of Immigration Appeals ("BIA") dismissing his appeal of an order by the
immigration judge ("IJ") denying his application for asylum. For the following
reasons, the petition is DENIED.

I.

Jiang is a native and citizen of China who was apprehended while being
smuggled into the United States in 2004. He initially stated that he came to the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-60483

United States to earn more money and that he feared being returned to China because he and his parents owed a lot of money to the smugglers. He later stated that he left China because he had no work at home and that he feared returning because he would be laughed at, he might be put in jail, and he would be in debt to the smugglers. In subsequent interviews, Petitioner stated that his village sometimes imposed high taxes and sometimes police beat the citizens. He stated that once he was arrested in his home for gambling and given a fine. Jiang further stated that he was afraid to return to China because he could not afford the taxes, he would be fined, and he might be punished for leaving the country illegally. The interviewing officer referred the case for further review.

Removal proceedings were initiated against Jiang. He admitted removability but requested asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). His written application stated that he was seeking relief based on his political opinion and under CAT. In his written application Jiang alleged that his girlfriend had been forced to undergo an abortion and that his mother had been beaten to death. He asserted his fear that Chinese officials had been looking for him and going to his mother's house.

In his written statement, Petitioner alleged that in January 2004 he was confronted by "cadres" of the village committee who demanded that he pay an unreasonable fee, which he refused to pay. The next day, the officials went to his home, punched his mother, and said that Jiang was cohabiting illegally and that they would return. In February 2004, Jiang's girlfriend told him she was pregnant. In May 2004, several family planning officials went to Jiang's home, kicked in his door, and attempted to seize his girlfriend. His mother attempted to intervene, at which point she somehow struck her head and suffered a brain injury. The girlfriend was taken to the hospital and given an abortion. After learning of these events, Jiang became angry and went to the family planning office to confront the officials. During the confrontation, he pushed one of the

2

officials.  The government officials accused him of "beating" the official and told him he would be sent to prison.  Shortly thereafter, Jiang fled.  He believes that officials have subsequently visited his home and have told his father that they will catch him and put him in prison.  Additionally, his family received a fine from the family planning office.

At a June 2007 hearing before the IJ, Petitioner testified as to these same facts.  With regard to the confrontation with family planning officials, he testified that he thinks he pushed somebody a little bit.   He said that Chinese authorities intended to charge him with "beating" the official.  With respect to his mother, he testified that she later died of her injuries.  Jiang further testified that he did not mention the abortion when he was first apprehended in the United States because it was a private matter.

The IJ determined that Jiang testified credibly.  But the IJ concluded that Petitioner could not establish per se eligibility for asylum on the basis of his girlfriend's abortion under applicable authority.  The IJ also determined that Petitioner could not establish past persecution or a well-founded fear of future persecution.[1]

Jiang appealed to the BIA.  The BIA evaluated his appeal under the applicable statutes and BIA precedent holding that a person may become eligible for asylum if he resists a coercive family planning policy and suffers past persecution or a has well-founded fear of future persecution as a result of such resistance.[2]  The BIA concluded that, even if it assumed that Jiang's actions in pushing the family planning official constituted resistance, Jiang had not established past persecution or a well-founded fear of future persecution as a

---

[1]   The IJ also decided that Jiang had failed to demonstrate eligibility for withholding of removal or for relief under CAT.

[2]   The BIA also concluded that Petitioner had not meaningfully challenged the denial of withholding of removal and CAT claims, such that he had waived these claims on appeal.

No. 09-60483

result. The BIA determined that Jiang had not shown that he was harmed after the incident involving his confrontation with Chinese officials or that his potential criminal prosecution for assault would be a pretext for persecution on account of his past resistance to China's family planning policies. The BIA further determined that Jiang had not shown that he was formally charged with a crime or that a criminal prosecution would be undertaken without due process. Accordingly, the BIA held that Jiang was not eligible for asylum.

## II.

The court reviews the BIA's order and the IJ's decision to the extent that it has "some impact on the BIA's decision." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). "We review factual findings of the BIA and IJ for substantial evidence, and questions of law *de novo.*" *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007). "[W]e generally afford substantial deference to the BIA's interpretation of immigration statutes unless there is 'compelling evidence that the BIA's interpretation is incorrect.'" *Arif v. Mukasey,* 509 F.3d 677, 679-80 (5th Cir. 2007) (internal citations omitted). On substantial evidence review of factual findings, the court reverses "only when the evidence is 'so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief.'" *Id.* (internal citations omitted); *Zhu*, 493 F.3d at 594 ("we may reverse a decision on a factual finding only when the evidence compels us to do so."). Accordingly, to reverse a decision of the BIA finding that a petitioner does not have a well-founded fear of future persecution, a petitioner "must 'show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" *Jukic v. I.N.S.*, 40 F.3d 747, 749 (5th Cir. 1994) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)). The same standard applies to reversing the BIA's finding that a petitioner did not suffer past persecution. *See Chi Lin v. Keisler*, 248 F. App'x 565, 566 (5th Cir. 2007) (petitioner could not show that "the evidence he presented was so

No. 09-60483

compelling that no reasonable factfinder could fail to find past persecution.")
(citing *Jukic*, 40 F.3d at 749). "Nevertheless, we generally also review the BIA's
decision 'procedurally' to ensure that the complaining alien has received a full
and fair consideration of all circumstances that give rise to his or her claims."
*Abdel-Masieh v. United States I.N.S.*, 73 F.3d 579, 585 (5th Cir. 1996) (internal
citation omitted).

### III.

On this petition for review, Jiang argues that the BIA erred in
determining that he is not eligible for asylum because he failed to prove that he
suffered past persecution or has a well-founded fear of future persecution based
on his resistance to China's family planning policies. To review Petitioner's
claims, we must consider the statutory framework under which an applicant
may apply for asylum.

### A.

Under the Immigration and Naturalization Act ("INA"), an alien who
arrives in or is present in the United States may apply for asylum. *See* 8 U.S.C.
§ 1158(a)(1) (2010). The Attorney General or the Secretary of Homeland
Security has discretion to grant asylum if the alien satisfies his burden of
establishing that he is a "refugee." *Id*. § 1158(b)(1). The INA defines a "refugee"
as the following:

> any person who is outside any country of such person's nationality
> or, in the case of a person having no nationality, is outside any
> country in which such person last habitually resided, and who is
> unable or unwilling to return to, and is unable or unwilling to avail
> himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

*Id*. § 1101(a)(42)(A).

No. 09-60483

In 1996 Congress specifically provided that forced abortions and involuntary sterilizations constitute persecution on account of political opinion:

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well-founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well-founded fear of persecution on account of political opinion.

*Id*. § 1101(a)(42)(B).

After Congress enacted 8 U.S.C. § 1101(a)(42)(B), the BIA interpreted this statute as providing presumptive refugee status to the spouses of persons forced to undergo an abortion or an involuntary sterilization. *In re C-Y-Z, 21 I. & N. Dec. 915, 919-20* (BIA 1997). This court accorded deference to and endorsed the BIA's decision to extend *per se* statutory relief only to spouses – and not to unmarried partners – in a case in which the male petitioner was neither formally nor informally married to his "live-in" girlfriend who had been forced to undergo an abortion in China. *Ru-Jian Zhang v. Ashcroft*, 395 F.3d 531, 532 (5th Cir. 2004) (petitioner "exhibited no legally cognizable 'resistance' to China's population control program – merely impregnating one's [live-in] girlfriend is not alone an act of resistance"). Later, the BIA overruled its holding in *C-Y-Z* to the extent that it permitted *per se* eligibility for spouses, determining that even a spouse of one forced to undergo an abortion or sterilization is not presumptively entitled to asylum eligibility, but must instead satisfy the other elements of the statute by demonstrating that he or she was persecuted or has a well-founded fear of future persecution based on "failure or refusal" to undergo such a

6

No. 09-60483

procedure or "other resistance" to a population control program. *See In Matter of J-S, 24 I. & N. Dec. 520, 521* (BIA 2008).

Thus, we evaluate a claim for asylum by an unmarried male applicant such as Jiang[3] whose application for asylum is based on his girlfriend's coerced abortion to determine the extent of his "other resistance" to China's family policies and his purported experience of past persecution or fear of future persecution. With this framework in mind, we turn to Jiang's particular arguments.

B.

We first consider Jiang's argument that the BIA erred by failing to take into account some of his acts of resistance to China's family planning policies. We conclude that the BIA was entitled to disregard Jiang's actions that are irrelevant to his asylum claim.

The BIA assumed *arguendo* that Petitioner had engaged in other resistance to China's coercive family planning policies by pushing the family planning official. This assumption is consistent with the general definition of resistance applied in other cases. *See, e.g., Zhuang Ping Lin v. United States Att'y Gen.*, 555 F.3d 1310, 1316 (11th Cir. 2009) (punching a family planning official and tearing up the fine was assumed to be "other resistance"); *Yi Qiang Yang v. United States Att'y Gen.*, 494 F.3d 1311, 1319 (11th Cir. 2007) (confronting and getting into physical altercation with planning officials constituted other resistance).

Not all of Jiang's actions, however, constituted other resistance. For instance, Petitioner urges the court to view several of his past actions as constituting resistance to Chinese government policy, such as his prior arrest for gambling and his resistance to exorbitant fees and taxes. On this review, these

---

[3] Jiang has not testified that he was married to his girlfriend, either formally or informally.

7

No. 09-60483

allegations of resistance do not appear to be relevant in any way to China's family planning policies and seem to have no bearing on Petitioner's claim for asylum.[4] Accordingly, the BIA's decision to assume that Jiang's confronting and pushing the Chinese official was an act of resistance while disregarding his other irrelevant acts is supported by substantial evidence.

C.

We next turn to Jiang's argument that the BIA erred in deciding that he failed to prove that he had been subjected to past persecution on account of such resistance. An applicant who engages in other resistance to a family planning policy may be eligible for asylum if he can prove that he was subjected to past persecution. 8 U.S.C. § 1101(a)(42)(B). The BIA held that Petitioner could not show past persecution because he was not harmed after the incident involving his confrontation with Chinese officials. We conclude that this decision is supported by substantial evidence.

Persecution is defined as "[t]he infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments." *Mikhael*, 115 F.3d at 303 n.2. To qualify as persecution, "there must be some "particularized connection" between the harm and the alien's race, religion, nationality, membership in a particular social group, or political opinion. *Faddoul v. I.N.S.*, 37 F.3d 185, 188 (5th Cir. 1994).

With regard to asylum claims based on the coerced abortion or sterilization of one's spouse, to prove persecution this court generally requires some showing of a higher degree of actual harm to the applicant himself or herself than Jiang

---

[4] Moreover, because we previously endorsed the view that an unmarried male petitioner who had been living with his girlfriend when she was forced to have an abortion "exhibited no legally cognizable 'resistance'" to China's population control program, *Zhang*, 395 F.3d at 532, Jiang's co-habitation with his girlfriend and conceiving with her do not constitute legally cognizable acts of resistance.

has shown here.  For instance, we  recently determined that an unmarried applicant whose girlfriend had been forced to undergo an abortion could not prove past persecution even though he had been arrested, detained, and beaten after refusing to tell family planning officials where his girlfriend was located. *Chi Lin*, 248 F. App'x at 566.[5]

Likewise, in a very similar case decided in the Eleventh Circuit, the court affirmed the BIA's determination that an asylum applicant who had confronted a family planning official after his girlfriend's forced abortion and punched the official in the face, thereby incurring a fine and the threat of arrest before fleeing, did not suffer past persecution.  *Zhuang,* 555 F.3d at 1316.  The court emphasized that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  *Id.*  (internal citations omitted). And in another similar Eleventh Circuit case, the court determined that an asylum applicant could not establish past persecution when the evidence showed that he had a physical altercation with family planning officials, he was subpoenaed by the local security office, and the family planning officials were looking for him and trying to arrest him.  *Yang*, 494 F.3d at 1319.

The same reasoning of these cases applies to the case at hand.  In response to his confronting and pushing the officials, Petitioner was fined and threatened with arrest, just as in the *Zhuang* case.  But, as in that case, Petitioner fled before he could suffer any harm amounting to persecution.  The only significant fact creating any kind of distinction between the present case and this authority is that Petitioner's mother suffered an injury that eventually became fatal when

---

[5] In that case, we favorably cited opinions of other circuits holding that asylum applicants could not prove past persecution despite showing that they had experienced some harm.  *Id.* (citing multiple circuit opinions including *Chen v. Ashcroft*, 381 F.3d 221, 233 (3d Cir. 2004) (no past persecution where petitioner had suffered beatings that did not require medical treatment)).

No. 09-60483

she tried to resist the family planning officials' taking the girlfriend into custody. The mother was not injured, however, because of Petitioner's acts of resistance. To the contrary, the mother sustained injuries as a result of her own attempt to resist. Indeed, Petitioner's own acts of resistance – his confrontation with officials and pushing one of the officials – did not occur until after his mother was injured. Furthermore, there is no allegation that his mother was harmed or killed intentionally or purposefully in response to Petitioner's resistance.

Thus, consistent with the definition of past persecution as applied in our cases and in the persuasive decisions from other circuits cited above, the BIA was entitled to find that the Petitioner did not suffer past persecution, given that Petitioner was never harmed, arrested, detained, beaten, or personally subjected to any other similar punishment or extreme conduct. Under our deferential standard of review, therefore, the BIA's conclusion that Jiang failed to prove past persecution is supported by substantial evidence, and Jiang has not pointed to any evidence so compelling that no reasonable factfinder could fail to find past persecution.

D.

We next consider Jiang's contention that the BIA erred in deciding that he failed to prove that he has a well-founded fear of persecution. An applicant who engages in other resistance to a family planning policy may still be eligible for asylum, even though he cannot show past persecution, if he can prove that he has a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(B). The BIA held that Petitioner cannot show such a well-founded fear because he cannot establish that his potential criminal prosecution for pushing the official would be a pretext for persecution on account of his past resistance to China's family planning policies. This decision is supported by substantial evidence.

To establish a well-founded fear of future persecution, a petitioner must demonstrate "a subjective fear of persecution, and that fear must be objectively

reasonable." *Chen v. Gonzales*, 470 F.3d 1131, 1135 (5th Cir. 2006). Fear of persecution must be "based on one of the five enumerated factors" in the refugee statute. *Castillo-Rodriguez v. I.N.S.*, 929 F.2d 181 (5th Cir. 1991). Punishment for a criminal act cannot be considered persecution unless the punishment is "excessive or arbitrary" and is motivated by a statutorily protected ground. *Abdel-Masieh*, 73 F.3d 579 at 584; *see also Tesfamichael v. Gonzales*, 469 F.3d 109, 117 (5th Cir. 2006) (same).

Accordingly, Petitioner has not established that he has a well-founded fear of future persecution. His potential prosecution for pushing the Chinese official cannot constitute future persecution because, as the BIA noted, Jiang has not showed that the potential prosecution for his admittedly criminal act would be pretextual, or based on a protected ground. Moreover, he has not showed that the prosecution would be "arbitrary or excessive," as required. *Abdel-Masieh*, 73 F.3d at 584.

In the factually similar *Zhuang* case, discussed above, the petitioner had punched a family planning official and thereby been subjected to a fine and threats of imprisonment in China. The court found that the petitioner feared prosecution for "striking a family planning official and leaving China illegally," but held that "these are not statutorily protected grounds." *Zhuang*, 555 F.3d at 1316-17. Additionally, the court held that prosecution based on a statutorily protected ground must be "sufficiently extreme to constitute persecution," which is a standard that the petitioner in that case could not meet, despite his credible fear that he might be fined or imprisoned for striking the official. *Id*. We find this reasoning persuasive here.

Furthermore, although Petitioner has argued that Chinese officials are trying to imprison him for "beating" an official rather than simply "pushing" an official, Jiang has presented no evidence that these different types of actions are treated differently under Chinese law, or that "pushing" a government official

No. 09-60483

is not an offense typically resulting in imprisonment under Chinese law. Even more importantly, Jiang has presented no evidence that charges have been filed against him. In the absence of formal charges, we cannot conclude that his potential prosecution for admittedly pushing a Chinese government official would be pretextual, excessive, or arbitrary.[6]

In light of the applicable standard of review, therefore, the BIA's decision that Jiang lacks a well-founded fear of future persecution is supported by substantial evidence, and the evidence certainly does not compel reversal on this issue.

IV.

The Petitioner having received a full and fair consideration of his claims, the BIA correctly determined that he is not eligible for asylum. Accordingly, this petition for review is DENIED.

---

[6] Nor can we conclude that this potential prosecution would be carried out without due process of law, even though Jiang has presented a State Department report noting generally that due process is absent in parts of China, because "[g]eneral information on conditions in a country" is only relevant "when it is used to support specific information relating to the alien's well-founded fear of persecution." *Ganjour v. I.N.S.*, 796 F.2d 832, 837 (5th Cir. 1986).